IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

**VERGEL JOSEPH BAUTISTA**,

      Petitioner,

v.                                                                        **Case No. 19-CV-169-RAW-KEW**

**SCOTT CROW**,

      Respondent.

## OPINION AND ORDER

This action is before the Court on Vergel Joseph Bautista's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus.  Dkt. 1.  Bautista is a *pro se* state inmate in the custody of the Oklahoma Department of Corrections who is currently incarcerated at the Davis Correctional Facility in Holdenville, Oklahoma.   He is attacking his convictions and sentences in Muskogee County District Court Case No. CF-2014-1025 for burglary in the first degree (Count 1), grand larceny (Count 3), and knowingly concealing stolen property (Count 4), setting forth the following grounds for relief:

    I.      Ineffective assistance of trial counsel; [1]

    II.     Ineffective assistance of appellate counsel.

Dkt. 1 at 6, 15.

---

[1] In his habeas petition, Bautista states ". . . Petitioner, did in fact, meet both prongs of the *Strickland* standard of review.  Petitioner incorporates by reference all issues within his Direct Felony Appeal . . . [and] Application for Post-Conviction Relief hereto as if plead in full.  These very specific cited instances of ineffective assistance of counsel has resulted in the complete denial . . . of his protected Sixth Amendment Constitution right."  Dkt. 1 at 6.  The Court finds, even under the liberal construction lens, that Bautista is addressing only his ineffective assistance of trial counsel claims with this statement.  Moreover, Bautista does not reference any other claim raised on direct appeal or in his post-conviction proceedings, thus failing to comply with the Rule 2(c) of *Rules Governing Section 2254 Cases in the United States District Courts* (The petitioner must specify (1) all grounds for relief, (2) the facts supporting relief, and (3) the relief requested).

Respondent concedes, and the Court finds, that Bautista has timely filed his habeas action. Dkt. 26 at 2. Respondent argues one portion of Bautista's ineffective assistance of trial claim and the entirety of his ineffective assistance of appellate counsel claim are unexhausted and procedurally defaulted. The following records have been submitted to the Court for consideration in this matter:

A. Bautista's judgment and sentence. Dkt. 26-1.

B. Bautista's direct appeal brief. Dkt. 26-2.

C. The State's brief in Bautista's direct appeal. Dkt. 26-3.

D. Bautista's reply brief in his direct appeal. Dkt. 26-4.

E. Opinion affirming Bautista's judgment and sentence. *Bautista v. State*, No. F-2016-197 (Okla. Crim. App. June 1, 2019) (unpublished). Dkt. 26-5.

F. Bautista's application for post-conviction relief, filed in *Bautista v. State*, No. CF-2014-1025 (Muskogee Cnty. Dist. Ct.) on June 6, 2018. Dkt. 26-6.

G. Order denying application for post-conviction relief, filed in Case No. CF-2014-1025 on October 23, 2018. Dkt. 26-7.

H. Bautista's Petition in Error in Case No. PC-2018-1219 (Okla. Crim. App.). Dkt. 26-8.

I. Order affirming denial of application for post-conviction relief, filed in *Bautista v. State*, No. PC-2018-1219 (Okla. Crim. App. Mar. 29, 2019) (unpublished). Dkt. 26-9.

J. Order denying Bautista's application for post-conviction relief in Muskogee County District Court Case Nos. CF-2008-597, CF-2008-804, CF-2008-867, CF-2009-47, CF-2009-365. Dkt. 26-12.

K. Order affirming denial of post-conviction relief, filed in *Bautista v. State*, No. PC-2019-879 (Okla. Crim. App. Feb. 21, 2020). Dkt. 26-13.

L. Transcripts and Original Record. Dkt. 27.

## I.  PROCEDURAL BACKGROUND

On December 29, 2014, the State of Oklahoma charged Bautista by Information in Muskogee County District Court, No. CF-2014-1025, with one count of burglary in the first

degree, one count of burglary in the second degree, one count of grand larceny, and one count of knowingly concealing stolen property. Dkt. 27-5 at 9-10. The state subsequently dropped the count of burglary in the second degree. *Id*. at 33-34. The state sought enhancement of Bautista's sentence because of prior convictions for possession of controlled dangerous substances, Muskogee County District Court Case No. CF-2009-365; distribution of controlled dangerous substances, Muskogee County District Court Case No. CF-2009-47; possession of controlled dangerous substances with intent to distribute, Muskogee County District Court Case No. CF-2008-867; burglary in the second degree, Muskogee County District Court Case No. CF-2008-804; and burglary in the second degree, Muskogee County District Court Case No. CF-2008-597. *Id*. at 11-12, 96.

Bautista's case proceeded to jury trial, and on March 3, 2016, the jury found Bautista guilty of each count. *Id*. at 104-09. The jury further found that each count occurred after two felony convictions and sentenced Bautista to 35 years for burglary in the first degree, 10 year for grand larceny, and 10 years for knowingly concealing stolen property. *Id*. These sentences ran concurrently. *Id*. at 104-11.

Following his conviction, Bautista filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), raising nine claims. Dkt 26-2. Relevant to this proceeding, Bautista raised a claim to the OCCA arguing he received ineffective assistance of trial counsel when his counsel failed to seek certain jury instructions, failed to raise an objection to the improper sentencing enhancement, and failed to demur on the knowingly concealing stolen property count. *Id*. at 51-56. The OCCA reviewed Bautista's claims and affirmed the judgment and sentence on June 1, 2017. *Bautista*, No. F-2016-197 at 13. Dkt. 26-5.

On June 6, 2018, Bautista filed an application for post-conviction relief. *Bautista*, No. CF-2014-1025. Dkt. 26-6. In it, he raised four claims. First, Bautista claimed he received ineffective assistance of trial counsel; second, that his due process rights were violated when prosecutors elicited false testimony from Nathan Graham; third, the Oklahoma statutory enhancement scheme is unconstitutionally arbitrary and capricious; and fourth, that the lack of sentencing guidelines violates the Oklahoma constitution. *Id.* The trial court denied Bautista's claims, because his first claim was raised on direct appeal and was barred by res judicata, and the remaining claims were barred because they could have, but were not, raised on direct appeal. *Bautista*, No. CF-2014-1025 at 2. Dkt. 26-7. The OCCA reviewed these claims and affirmed the trial court's decision on March 29, 2019. *Bautista*, No. PC-2018-1219 at 2-3. Dkt. 26-9.

Bautista then filed the instant habeas petition on June 3, 2019. Dkt. 1.

## II.    FACTUAL BACKGROUND

At trial, the state presented evidence that, Bautista, together with Johnathon Smith, met Felisha Qualls at the local casino in the early morning hours of December 22, 2014. Dkt. 27-2 at 24. Bautista, Smith, and Qualls came up with a plan to steal marijuana from Heather Davis's home, because Davis "had ripped Joey [Bautista] off. And Joey was going to go get the money back." Dkt. 27-2 at 28, 193. Around 2:00 a.m., the group headed to Nathan Graham's home, where they smoked meth together before Bautista, Smith, and Qualls drove to Ms. Davis's home. Dkt. 27-2 at 27-28; Dkt. 27-1 at 83, 87, 90. When they arrived, they began checking for unlocked doors and windows. Dkt. 27-2 at 28. After finding the front door and the kitchen window locked, Bautista broke a window into the garage and help Qualls climb through. Dkt. 27-2 at 28-30; Dkt. 27-1 at 94-95. Once inside, Qualls opened the garage side door and let Bautista and Smith into

the garage. Dkt. 27-2 at 28-30. Bautista then broke the lock on the door leading from the garage into the home. *Id*. at 30.

After gaining entry to the home, Bautista proceeded to the back bedroom where he thought the marijuana was kept. Dkt. 27-2 at 31. Unable to find the marijuana, Bautista began to steal items. *Id*. As it was the week of Christmas, Bautista stole Christmas presents from under the Christmas tree, along with golf clubs, a purse, and an assortment of power tools from the garage. Dkt. 27-1 at 148-70; Dkt. 27-2 at 95-96. When some of the items were too heavy to carry, the group used a wheelchair found in the garage to help. Dkt. 27-2 at 59. After some time, Bautista went back into the home and to search again for the marijuana in the back bedroom. *Id*. at 60.

Living in the home were Ms. Davis, Ms. Davis's two children, LaQuinta Anderson, and Ms. Anderson's child. Dkt. 27-2 at 93-94. Ms. Davis was asleep in the back bedroom with one of her children, and Ms. Anderson was asleep on the couch with her child and Ms. Davis's other child. *Id*. Ms. Davis awoke to see Bautista in her bedroom going through her dresser. *Id*. at 94. She screamed and chased Bautista out of the house through the garage. *Id*. at 94-95. Bautista and Qualls jumped into the car, and Smith drove them away with the stolen items. *Id*. at 95. When Ms. Davis inspected her house, she found three broken windows and the door leading from the garage to the house damaged. *Id*. at 97-98; *see also* Dkt. 27-1 at 22.

From Ms. Davis's house, Bautista, Smith, and Qualls headed back to Graham's house. Dkt. 27-1 at 103; Dkt. 27-2 at 35. There, Bautista and Graham began unloading the car with the stolen property and hiding it behind a trailer. Dkt. 27-1 at 103-04. After unloading, Bautista, Smith, and Qualls went back to Bautista's grandmother's home, where he was living at the time. *Id*. at 105-06. Police arrived at Bautista's grandmother's home that same day, and placed Bautista, Smith, and Qualls in custody. *Id*. at 107-08.

Officer Rickie Kubiak overheard Bautista tell Qualls the stolen property was at Graham's residence.  Dkt. 27-2 at 10-11.  Officer Kubiak and Bautista then went to Graham's home, where the stolen property was discovered, in part, in Graham's bedroom.  *Id*. at 11-13.  In his investigation, Officer Kubiak also discovered an active meth lab on the property.  *Id*. at 14.  Graham then gave a written statement to police that Bautista, Smith, and Qualls came to his house with a "bunch of junk."  *Id*. at 177.  At trial, Graham attempted to retract this statement, saying it was only Smith that came to his home that night and only Smith returned with the stolen property.  *Id*. at 75.

After his arrest, Bautista provided a written statement to police.  Dkt. 27-2 at 193.  In it, he states, in part,

> Me and my cuzin where in need of some weed so we went to Heather Davis house in Warner to buy some from her cuz she has the best medical "weed" in town, plus she robbed me for $200.00. . . . I took matters into my own hands and wish I could take it back. . . . My cousin gave me the idea or came up with the idea of stashing it at some boys house.  I was only going take an ounce of weed off of her but ended up taking more than that.

*Id*.

## III.    STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## IV.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first claim for relief, Bautista argues he received ineffective assistance of counsel when his trial attorney (A) failed to investigate and object to the sentencing enhancement for prior felony convictions, (B) failed to request or object to pertinent jury instructions, and (C) failed to impeach Nathan Graham.

To prevail on a claim of ineffective assistance of counsel, a prisoner has the burden of showing his counsel was deficient and that such deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A reviewing court's "scrutiny of counsel's performance must be highly deferential," and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Even if counsel's performance is shown to be unreasonable under this deferential standard, *Strickland* requires the defendant to show prejudice, *i.e.*, to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

Section 2254(d)(1) adds a second layer of deference. When a federal habeas court reviews a state court's decision on a *Strickland* claim, the habeas court must grant the state court "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The only question for the habeas court is whether the state court had a reasonable basis for rejecting the *Strickland* claim. *Id.* "The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* at 105.

### A. Failing to investigate and object to sentencing enhancement for prior felony convictions

In his first complaint about trial counsel, Bautista argues that his trial counsel was ineffective for failing to properly investigate and object to his five prior convictions being used to

enhance his sentence. Dkt. 1 at 8. Drawing from his direct appeal brief, Bautista states that these previous convictions were based on guilty pleas that were entered into drug court. Dkt. 26-2 at 17. Bautista argues it was error for his trial counsel not to argue the prior convictions were void because he completed the drug court program prior to the commission of the crime at hand, and according to Okla. Stat. tit. 22 § 471.9(A)(1), these judgment and sentences should have been dismissed. *Id*. at 18.

Respondent argues Bautista's sentences were properly used for enhancement because the state introduced five prior felony convictions via certified judgment and sentences at trial. Dkt. 26 at 43. Respondent states that under Oklahoma law, a certified copy of a judgment and sentence is prima facie evidence of a prior conviction, and because Bautista did not timely appeal these prior convictions, he missed his opportunity to challenge the validity of these prior convictions and cannot collaterally attack them in this proceeding. *Id*. at 43-46.

On September 14, 2009, Bautista pleaded guilty in five criminal cases: Muskogee County District Court, No. CF-2009-365, No. CF-2009-47, No. CF-2008-867, No. CF-2008-804, and No. CF-2008-597 (collectively "prior convictions"). Dkt. 27-3 at 80-98. These prior convictions were entered into drug court, and the record shows Bautista completed the drug court program on August 13, 2013. *Id*. at 74. Bautista's case manager noted on February 4, 2014, that he explained unsupervised probation and would turn the file in for review. *Id*. No order dismissing these actions was entered. After his arrest for the crime challenged in this habeas petition, the state sought revocation for the suspended sentences in each case. *Bautista v. State*, No. CF-2009-365 (Muskogee Cnty. Dist. Ct.) Dkt. 27-3 at 96-98; *Bautista v. State*, No. CF-2009-47 (Muskogee Cnty. Dist. Ct.) Dkt. 27-3 at 92-94; *Bautista v. State*, No. CF-2008-867 (Muskogee Cnty. Dist. Ct.)

(Dkt. 27-3 at 88-90); *Bautista v. State*, No. CF-2008-804 (Muskogee Cnty. Dist. Ct.) Dkt. 27-3 at

84-86; *Bautista v. State*, No. CF-2008-597 (Muskogee Cnty. Dist. Ct.) Dkt. 27-3 at 80-82.

At trial, prior to the second (punishment) stage, Bautista's trial counsel argued to the trial

court that these prior convictions could not be used to enhance Bautista's sentence because they

were not final.   Dkt. 27-3 at 26-28.   Trial counsel argued Bautista's sentences in the prior

convictions had been stayed while he participated in drug court, thus making the judgments

"conditional order[s]."   *Id*.   The trial court concluded that the prior convictions were "final

convictions."   *Id*. at 35.

Bautista raised the underlying claim on direct appeal, and the OCCA held:

[Petitioner] entered guilty pleas to six felony offenses and one misdemeanor offense
charged in 2008 and 2009.  Sentencing on each was stayed pending his successful
completion of the Muskogee County Drug Court Program, upon [Petitioner]'s
successful completion of this program, Judgment and Sentence was imposed in the
seven earlier cases and his sentences were suspended.  After [Petitioner] was
charged in the present case, his suspended sentences were revoked.  The prior
felony convictions were used by the State to enhance [Petitioner]'s sentence in the
present case and [Petitioner] complains that this was error.  Although [Petitioner]
objected to the use of the prior convictions to enhance his sentence in this case, he
objected on different grounds than those raised on appeal.  Consequently, we
review this claim for plain error. . . .

[Petitioner] complains on appeal that because he successfully completed drug court,
the 2008 and 2009 cases should have been dismissed pursuant to 22 O.S.2011, §
471.9 (A)(1) which provides that "[w]hen an offender has successfully completed
the drug court program, the criminal case against the offender shall be . . .
[d]ismissed if the offense was a first felony offense."   Thus, he argues the
Judgments and Sentences imposed in these cases were void and should not have
been used to enhance his sentences in the present case.  The record does not reflect
that [Petitioner] appealed the Judgments and Sentences used to enhance his
sentence in the present case.  Rule 4.1, Rules of the Oklahoma Court of Criminal
Appeals, Title 22, Ch. 18, App. (2017) provides the procedure by which an appeal
may be perfected from a conviction on a plea of guilty.  The current appeal is not
the proper place for [Petitioner] to collaterally attack his prior convictions.  *See
Doyle v. State*, 1989 OK CR 85, ¶ 31, 785 P.2d 317, 327.  Any challenge to the
validity of the prior convictions must, at this juncture, be made through the
provisions of the Uniform Post-Conviction Procedure Act.  *See* 22 O.S.2011, §
1080 et seq.  Absent a timely and successful challenge to the validity of

[Petitioner]'s prior convictions, the record supports a finding that there was no error, plain or otherwise, in the trial court's decision to allow the State to enhance [Petitioner]'s sentence in this case through the introduction of the Judgments and Sentences entered in prior convictions.

*Bautista*, No. F-2016-197 at 3-4. Dkt. 26-5.

On February 3, 2020, this Court stayed Bautista's habeas proceedings while he challenged the judgment and sentences in his prior convictions. Dkt. 14. On February 21, 2020, the OCCA affirmed the trial court's order denying Bautista post-conviction relief for his prior convictions. Dkt. 26-13. The OCCA found that Bautista failed to timely appeal the revocation orders in his prior convictions, and thus they were waived. *Id*. at 3-4. Similarly, the OCCA found that Bautista could not show the failure to appeal was due to no fault of his own. *Id*.

Both the Tenth Circuit and Oklahoma recognize that a final judgment is presumed valid. *See United States v. Ransom*, 13 F.3d 407 (10th Cir. 1993) ("A guilty plea, like all final judgments, is presumed valid"); *Matter of Akers' Est.*, 541 P.2d 284, 286 *(citing Warren v. Stansbury*, 126 P.2d 251 (1942)) ("a presumption [exists] that judgments, when impeached collaterally, are in all respects valid."). In Oklahoma, the only method for challenging a prior conviction is through a post-conviction application in the matter. *See Martin v. State*, 674 P.2d 37, 41 ("The trial court correctly refused to allow appellant to collaterally attack those two prior convictions. Such collateral attacks must be voiced by post-conviction relief procedures. 22 O.S.1981, § 1080, which provides that, excluding a timely appeal, the post-conviction procedure is the only method for challenging a conviction.").

Moreover, the United State Supreme Court in *Lackawanna Cnty. Dist. Att'y v. Coss* resolved the question of "whether § 2254 provides a remedy where a current sentence was enhanced on the basis of an allegedly unconstitutional prior conviction for which the sentence has fully expired." 532 U.S. 394, 400–01 (2001). The Court held "[i]f . . . a prior conviction used to

enhance a [state] sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant . . . may not collaterally attack his prior conviction through . . . § 2254." *Id*. at 402 (internal citations and quotations omitted). While *Coss* focuses on Bautista's underlying claim, it gives further guidance on the reasonableness of the OCCA's decision.

At the time Bautista's trial counsel objected to the prior convictions being used for enhancement, Bautista had not challenged his prior convictions through post-conviction proceedings. *See* Dkt. 26-12 at 2. As such, had his trial counsel objected to the validity, rather than finality, of the prior convictions, it is presumed the trial court would have followed Oklahoma law and found such objection to be a collateral attack on Bautista's prior conviction and would have overruled such objection. Because these prior convictions were presumed final and no post-conviction application attacking these convictions had been filed when the OCCA made its decision, it is not unreasonable for the OCCA to determine that trial counsel's performance was not deficient. *Bautista*, No. F-2016-197 at 12. Dkt. 26-5. Further, the available remedies to challenge Bautista's prior convictions are now foreclosed. Dkt. 26-13. This confirms the OCCA's finding that counsel was not deficient for challenging the validity of these prior convictions.

As such, this claim is denied.

### B. Failing to request or object to pertinent jury instructions

In his second complaint about trial counsel, Bautista argues his trial attorney was ineffective for failing to request a number of jury instructions that would have altered the outcome of his trial. Dkt. 1 at 7-8. The OCCA reviewed and rejected Bautista's claims on direct appeal. The OCCA found a request for these jury instructions was meritless, stating, "[d]efense counsel

cannot be found ineffective for failing to object to the omission of jury instructions as the instructions at issue were not warranted." *Bautista*, No. F-2016-197 at 12.  Dkt. 26-5.

### 1. Consent Defense Instruction

In his first complaint about jury instructions, Bautista argues that his trial counsel should have requested an instruction that consent was given by the victim to enter the property.  Dkt. 1 at 7-8.  This is a defense to burglary, as burglary requires the state to prove both a breaking and entering.  *Id*. at 8; *see also* Okla. Stat. tit. 21 § 1431.  Bautista alleges that had his counsel asked for this defense, he would have been found not guilty on the first degree burglary charge.  Dkt. 1 at 8.  Respondent argues that the OCCA's decision was not unreasonable, because it was based on ample evidence that Bautista did not have consent from the victim to enter the home.  Dkt. 26 at 14-18.

The record reflects that Bautista and Ms. Davis had a relationship prior to the events of December 22, 2014, primarily with Ms. Davis selling Bautista drugs.  Dkt. 27-2 at 50.  However, the record refutes any implication that this relationship gave Bautista, explicitly or implicitly, consent to enter the home.  Rather, the record shows that Bautista, Smith, and Qualls arrived at Ms. Davis's home before sunrise, while everyone was asleep.  Dkt. 27-1 at 83, 87, 90, 174; Dkt. 27-2 at 27-28.  Bautista did not knock, ring, or call Ms. Davis to gain entry.  Instead, he walked around the home looking for unlocked doors and windows before he broke a window and door for entry.  Dkt. 27-1 at 94-95; Dkt. 27-2 at 28-30.  Once inside, Bautista quietly moved around the home, but fled when he was seen by Ms. Davis.  Dkt. 27-2 at 94-95.

The facts presented at trial paint a clear picture that Bautista was not invited or given consent to enter the property.  As such, the OCCA's decision that a request for a consent defense was without merit is not unreasonable.  Dkt. 27-5 at 12.  Likewise, trial counsel's failure to raise

a meritless instruction does not equate deficient performance. Thus, the OCCA's decision was not an unreasonable application of *Strickland*, and this proposition is denied.

### 2. Voluntary Intoxication

In his second complaint about jury instructions, Bautista argues his trial counsel should have requested an instruction on voluntary intoxication. Dkt. 1 at 7-8. In Oklahoma, the charges against Bautista are specific intent crimes. Okla. Stat. tit. 21, §§ 1431, 1707, 1713. The defense of voluntary intoxication is available if "(1) the defendant was intoxicated; and (2) he was so utterly intoxicated, that his mental powers were overcome, rendering it impossible for him to form the specific criminal intent . . . element of the crime." *Tryon v. State*, 423 P.3d 617, 639 (Okla. Crim. App. 2018) (quotations and alterations omitted) (emphasis in original). Bautista argues that he was under the influence of methamphetamine, which "placed into question his ability to formulate the requisite mens rea for [these] specific intent crimes." Dkt. 26-2 at 38.[2]

Respondent argues the OCCA's decision was not unreasonable. Dkt. 26 at 22-24. This is because the decision was based on ample evidence that Bautista was not so intoxicated that his mental powers were overcome, rendering it impossible for him to form the specific criminal intent. *Id*.

While the record indicates that Bautista used methamphetamine prior to these crimes (Dkt. 27-2 at 193), his actions contradict that his methamphetamine use rendered him powerless or unable to make choices. This is evidenced by his multiple attempts to enter the home, problem solving each barrier to entry, and changing plans to steal anything in sight rather than just drugs.

---

[2] The Court, in an attempt to liberally construe Bautista's petition, looks to his direct appeal (Dkt. 26-2) to fully understand his complaints of trial counsel. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also* Dkt. 2 at 7 ("Petitioner incorporates by reference all issues within his Direct Felony Appeal . . .")

Moreover, the plan to enter the home was conceived at a casino, some distance away from the victim's home. Dkt. 27-2 at 24. The record supports the OCCA's holding that a request for a voluntary intoxication instruction was meritless. As such, the OCCA's decision that trial counsel was not deficient was not an unreasonable application of *Strickland*, and this proposition is denied.

### 3. Lesser-included offenses

In his third complaint about jury instructions, Bautista argues his trial counsel should have requested an instruction on the lesser offenses of illegal entry or breaking and entering without permission. Dkt. 2 at 7-8; *see also* Dkt. 26-2 at 39-41. He states that since the "breaking" element contained with the first degree burglary charge was at issue, Oklahoma law required the jury to be instructed on the misdemeanor of illegal entry. Dkt. 26-2 at 39. Similarly, because Bautista was voluntarily intoxicated, the jury should have been instructed on the misdemeanor crime of breaking and entering without permission. *Id*.

Respondent argues the OCCA's decision was reasonable, because the prima facie evidence for these crimes must first be presented. Dkt. 26 at 49-50. Respondent further argues trial counsel's omission of these instructions was a valid strategic choice, because Bautista claimed his innocence of the charges, and by electing this trial strategy, Bautista foreclosed other possible defenses. *Id*. at 50-52.

As found above, the OCCA's decision on voluntary intoxication and consent was reasonable and based on the record. As such, the element of "breaking" was not at issue, other than the prosecution's burden to prove the same. Thus, the failure to request the lesser offense instruction of illegal entry, based on the premise the element of "breaking" was at issue, was without merit. Similarly, because the issue of voluntary intoxication was not at issue, the failure to request the lesser offense instruction on breaking and entering without permission based upon

Bautista's voluntary intoxication is without merit. Thus, the OCCA's decision that trial counsel was not deficient for seeking lesser included offenses was not an unreasonable application of *Strickland*, and this proposition is denied

### 4. Accomplice testimony and informant credibility

In his last complaint about jury instructions, Bautista argues that his trial counsel should have requested an instruction on accomplice testimony and informant credibility. Dkt. 2 at 7-8; Dkt. 26-2 at 41-46. Qualls and Smith were charged in Muskogee County District Court, Case Nos. CF-2014-1026 and CF-2014-1027, respectively, for their participation in this crime. *State v. Qualls*, No. CF-2014-1026 (Muskogee Cnty. Dist. Ct.); *State v. Smith*, No. CF-2014-1027 (Muskogee Cnty. Dist. Ct.); Dkt. 26-2 at 42. As such, Bautista contends that Oklahoma law defines them as accomplices, and because accomplice testimony is "inherently unreliable," Oklahoma law requires corroborative evidence of their testimony. *Id*. Bautista argues Qualls and Smith also meet the definition of an informant, because they accepted deferred sentences for their cooperation. *Id*. at 45. Further, when an informant testifies, an instruction about their credibility should be given. *Id*.

Respondent argues the OCCA's decision was not an unreasonable application of *Strickland*, because their testimony was corroborated by significant evidence presented at trial and the failure to request the instruction did not affect the outcome of the trial. Dkt. 26 at 52-53.

The OCCA reviewed both the ineffective assistance of trial counsel claim and the underlying claim. *Bautista*, No. F-2016-197 at 8-9, 11-12 (Dkt. 26-5). The OCCA found the failure of the trial court to instruct the jury on accomplice testimony to be harmless error, and trial counsel's failure to raise this issue did not constitute deficient performance. *Id*.

In Oklahoma, a "witness is an accomplice to the crime at trial if the witness could be charged with the same offense. Under 21 O.S. [2011], § 172, all persons who directly commit the act constituting the offense or aid and abet in its commission, even if not present, are principals and can be charged as an accomplice and held criminally liable." *Postelle v. State*, 267 P.3d 114, 126-127 (Okla. Crim. App. 2011) (internal citation and footnote omitted). When an accomplice testifies, an Oklahoma trial court is required to instruct the jury that corroborating evidence is necessary to sustain a conviction. Okla. Stat. tit. 22, § 742 ("A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof.").

Similarly, when a witness is an informant–someone who provides testimony for pay, immunity, or a lesser sentence–an Oklahoma trial court should, but is not required, to instruct the jury that this testimony should be weighed "with greater care than the testimony of an ordinary witness." Oklahoma Uniform Jury Instructions–Criminal (OUJI-CR) (2d) 9-43 (emphases omitted).

In the instant case, the testimony of Qualls and Smith was substantially corroborated. First, Ms. Davis testified that she saw the broken window and busted door that Bautista used to gain entry. Dkt. 27-2 at 97-98. Second, she testified she woke up to see Bautista in her room, rummaging through her dresser. *Id*. at 94. This corroborated the identity of Bautista as the perpetrator, independently placed him at the scene of the crime, and corroborated Smith's and Qualls' testimony. *Id*. at 31; Dkt. 27-1 at 99.

Most troubling for Bautista, however, is his written statement, quoted below in part:

Me and my cuzin where in need of some weed so we went to Heather Davis house in Warner to buy some from her cuz she has the best medical "weed" in town, plus

16

> she robbed me for $200.00. . . . I took matters into my own hands and wish I could take it back. . . . My cousin gave me the idea or came up with the idea of stashing it at some boys house. I was only going take an ounce of weed off of her but ended up taking more than that.

Dkt. 27-2 at 193. As such, there is ample evidence in the record to corroborate both Qualls' and Smith's testimony.

Based on the record, the Court finds the OCCA's decision that "Bautista was not denied his constitutional right to the effective assistance of counsel" is not an unreasonable application of *Strickland*, and this proposition is denied.[3]

### 5. Failing to impeach Nathan Graham's perjured testimony

In his third complaint about trial counsel, Bautista argues that Nathan Graham provided perjured testimony, contrary to his written statement given to police, and his trial counsel failed to properly investigate and cross-examine these statements. For context, Graham's involvement in the story began when the stolen property was dropped off at his residence. Dkt. 27-2 at 8-14. Prior to Graham's involvement, Officer Rickie Kubiak had placed Bautista, Smith, and Qualls in custody. *Id*. at 8. In speaking with them, Officer Kubiak overheard Bautista tell Qualls the stolen property was at Graham's residence. *Id*. at 10-11. Officer Kubiak and Bautista then went to Graham's home, where the stolen property was discovered, in part, in Graham's bedroom. *Id*. at 11-13. In his investigation, Officer Kubiak also discovered an active meth lab on the property. *Id*. at 14. Graham then gave a written statement to police that stated Bautista, Smith, and Qualls came to his house with a "bunch of junk." *Id*. at 177.

---

[3] The Court notes that the OCCA found the underlying claim, failure of the trial court to instruct the jury on accomplice testimony, was harmless error. *Bautista*, No. F-2016-197 at 9-10. Dkt. 26-5. This appears at odds with their holding that counsel was not deficient. *Id*. at 12. Regardless, Bautista's claim falls far short of meeting the prejudice requirement of *Strickland*. *Strickland*, 466 U.S. at 694

At trial, Graham attempted to retract his statement, testifying that he was "not in the right state of mind" at the time he gave the statement and attempted to say it was only Smith who was involved with the crimes at hand. Dkt. 27-2 at 68, 70-71. Graham testified that Smith came alone to his house alone, and he only brought tools for Graham to hold. *Id*. at 75. The prosecutor attempted to impeach Graham, because it appeared Graham was attempting to lay blame solely on Smith, who had already plead guilty and was subject to no more punishment, to alleviate Bautista's culpability. *Id*. at 75-82.

Bautista did not raise this claim on direct appeal but did raise the underlying claim of perjured testimony in his post-conviction proceedings, stating "[p]etitioner was denied due process when the state . . . elicited false testimony from Nathan Graham". *Bautista*, No. CF-2014-1025 at 13 (Dkt. 26-6). The OCCA found that because Bautista did not raise this claim on direct appeal, yet could have, he waived this claim. Dkt. 12-9 at 2; *see also* Okla. Stat. tit. 22, § 1086. The Court finds this claim is procedurally barred, because § 1086 is an independent and adequate state ground procedural ground to bar review. *Johnson v. Patton*, Case No. 15-6173, 634 Fed. App'x. 653, 663 (10th Cir. 2015) (quoting *Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999)) (unpublished). [4]

In addition, the Court finds Bautista cannot show cause or prejudice in failing to bring this claim.[5] Bautista states he discussed this claim with both his trial counsel when Graham testified and his appellate counsel prior to filing his direct appeal. Dkt. 1 at 16, 18. Moreover, it appears from the record that Graham was attempting to help Bautista with his testimony that

---

[4] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[5] *See* below for a fuller discussion of the procedural bar and its exceptions.

Bautista was not at his home on the day the crimes occurred. Rather, it seems Bautista wanted Graham to testify that Bautista was present at Graham's house, where the stolen property was found and recovered, on the day the crimes occurred. *Bautista*, No. CF-2014-1025 at 14 (Dkt. 26-6) (Graham "testified that Petitioner was not at his house on the date certain to the alleged crime. This was in fact a lie"). The Court finds that had Graham told Bautista's version of the events, it would have placed Bautista at the crime scene, with the stolen property that was being concealed. Thus, Bautista cannot show prejudice.

Finally, the Court finds, Bautista cannot meet the fundamental miscarriage of justice exception, as explained below. *See Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997). This is because of his written statement and evidence presented at trial undermines any claim of innocence.

As such, this claim is denied.

### 6. Failing to Demur to the charge of knowingly concealing stolen property

In his final complaint about trial counsel, Bautista alleges his trial counsel should have demurred to the charge of knowingly concealing stolen property. Dkt. 1 at 7; Dkt. 26-2 at 56. He argues the crime of concealing stolen property is subsumed in grand larceny, which raised issues of double jeopardy and multiple punishments. Dkt. 26-2 at 56.

Respondent argues that the OCCA's decision was not unreasonable, because the crimes of knowingly concealing stolen property and grand larceny are separate and distinct crimes. Dkt. 26 at 56. Specifically, Respondent states that the crime of grand larceny was completed when Bautista stole multiple items from the victim's home and fled with them in his vehicle. *Id*. "In a separate and distinct act, Petitioner concealed the property at a geographically separate place from the vehicle or his own home." *Id*. Thus, no double punishment occurred "because Petitioner's crime

of larceny was completed when he fled the victim's home and Petitioner committed a separate and distinct act of concealing the stolen property at Graham's residence before he returned to his own home." *Id*.

The OCCA reviewed this claim and held "[trial] counsel cannot be deemed ineffective for failing to demur on the concealing stolen property charge as that charge was supported by the evidence." *Bautista*, No. F-2016-197 at 12 (Dkt. 26-5). In reviewing the underlying claim, the OCCA found "the two offenses of grand larceny and knowingly concealing stolen property were separate and distinct offenses each requiring proof of an additional fact. There was no error, plain or otherwise." *Id*. at 11.

To determine trial counsel's performance, the Court first looks to whether the underlying claim has merit. *Ray v. McCollum*, No. CIV-15-306-R, 2017 WL 1753521, at *11 (W.D. Okla. Mar. 21, 2017) (unpublished) ("a trial attorney has no duty to make meritless objections and arguments at trial."); *see also Williams v. Trammell*, 782 F.3d 1184, 1200 (10th Cir. 2015) (*citing Harrington*, 562 U.S. at 88), *cert. denied*, *Williams v. Warrior*, 136 S. Ct. 806 (2016) (finding that where evidence was relevant and properly admitted at trial, the OCCA reasonably applied *Strickland* to find no deficient performance in the trial attorney's failure to object to the evidence); *Monroe v. Franklin*, No. 08-CV-434-TCK-TLW, 2012 WL 983940, at *6 (N.D. Okla. Mar. 22, 2012) (unpublished order) (holding "counsel did not perform deficiently in failing to lodge a meritless objection"), *appeal dismissed*, 475 Fed.Appx. 707 (10th Cir. 2012).

The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy." U.S. Const. Amend. V. "[A]t its core, the Clause means that those acquitted or convicted of a particular 'offence' cannot be tried a second time for the same 'offence.'" *United States v. Mier-Garces*, 967 F.3d 1003, 1011 (10th Cir. 2020), *cert. denied*, 141

S. Ct. 1431, 209 L. Ed. 2d 153 (2021) (internal citations omitted). "When the government charges a defendant under *separate statutes* for the same conduct, the test derived from *Blockburger v. United States*, 284 U.S. 299 (1932), determines whether the crimes are the 'same offense' for double jeopardy purposes and thus whether the Double Jeopardy Clause was violated." *Mier-Garces*, 967 F.3d at 1011–12 (internal quotations omitted) (emphasis in original). "In other words, *Blockburger*'s so-called same-elements test inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id*. at 1012.

In the instant case, the elements of knowingly concealing stolen property are (1) concealed or withheld (2) stolen personal property (3) from the owner, (4) knowing or believing the property had been stolen, (5) with the intent to permanently deprive the owner of that property. OUJI-CR (2d) 5-113. In juxtaposition, the elements of grand larceny are (1) a taking, (2) carrying away, (3) of (personal property)/(one or more firearms), (4) valued at more than $500.00, (5) by fraud or stealth, (6) with the intent to deprive permanently. OUJI-CR (2d) 5-93.[6] While the two crimes have similar elements, grand larceny's first two elements require the property be taken and carried away–*i.e.*, removed from its current location, whereas knowingly concealing stolen property requires one to conceal or withhold the property–*i.e.,* preventing the discovery thereof.

Moreover, courts may look to whether the charged crimes are separate acts. *Blockburger*, 284 U.S. at 301. Under this review, a court will look at factors such as time, location, and

---

[6] At the time Bautista committed the crime, the valued property must have exceeded $500. *See Grissom v. State*, 2011 OK CR 3, ¶ 49, 253 P.3d 969, 987. The Oklahoma Legislature amended the property value requirement to exceed $1,000 in 2018. *See* CRIMES AND PUNISHMENTS, 2016 Okla. Sess. Law Serv. Ch. 221 (H.B. 2751) (WEST) ("1. When the property taken is of value exceeding ~~Five Hundred Dollars ($500.00).~~ One Thousand Dollars ($1,000.00)")

completion of the act, among others, to determine whether the two crimes constitute separate acts. *Id*.; *see also U.S. v. Carlton,* 475 F.2d 104 (5th Cir.), *cert. denied,* 414 U.S. 842 (1973) (Although the counterfeit money that was the subject of both indictments was from the same issue, the crimes occurred at "[d]ifferent times and locations.").  In Oklahoma, the courts have found that the crime of larceny from a house is completed when a defendant leaves a home with stolen items with the intent to permanently deprive the owner of such items.  *Davis v. State*, 1999 OK CR 48, ¶ 7, 993 P.2d 124, 126.

Here, the crime of grand larceny was completed, and all the elements met, when Bautista drove away from Ms. Davis's home with the stolen property.  Ms. Davis knew where the property was, as she saw Bautista drive away in his car with her property.  To prevent the discovery of the stolen property, Bautista drove to a separate location and stored the stolen property in hidden places.  This shows a conscious attempt by Bautista to prevent the discovery of the stolen property after he completed the crime of grand larceny.

Further, each crime consisted of a distinct group of actors, although they overlap substantially.  The crime of grand larceny was completed by Bautista, Qualls, and Smith, whereas the crime of knowingly concealing stolen property was completed with the help of Graham.  As such, the Court finds the OCCA's decision was not unreasonable, in that the two crimes arose out of separate acts and that .  *See Bautista*, No. F-2016-197 at 10-113 (Dkt. 26-5).

Therefore, Claim One is denied in its entirety.

## V.    INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his second claim for relief, Bautista argues that he received ineffective assistance of appellate counsel.  Dkt. 1 at 16.  Bautista alleges that he provided his appellate counsel with information regarding issues with his sentencing and the perjured testimony of Graham, yet his

22

appellate counsel thought these claims were without merit and did not raise them.  *Id*. at 18.

Bautista states the OCCA's finding that these claims were barred by Okla. Stat. tit. 22, § 1086

supports his conclusion that appellate counsel was deficient.  *Id*. at 16.

Respondent argues this claim is unexhausted and procedurally barred.  Dkt. 26 at 63-67.

This is because if Bautista returned to state court in an attempt to exhaust this claim, the OCCA

would find the claim barred by Okla. Stat. tit 22, §1086, because it could have been raised in his

first application for post-conviction relief.  *Id*. at 63.  Respondent asks the Court to apply an

anticipatory bar and deny this claim.  *Id*.

The record in this case reflects that Bautista did not raise an ineffective assistance of

appellate counsel claim in post-conviction application.  Dkt. 26-2; *Bautista*, No. CF-2014-1025

(Dkt. 26-6).  Because Bautista did not raise any ineffective assistance of appellate counsel claims

to the highest court, this claim is unexhausted.  *Dever v. Kansas State Penitentiary*, 36 F.3d 1531,

1534 (10th Cir. 1994).

Before a federal court may grant habeas relief, the state prisoner must exhaust available

state remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal

habeas claim[s] to state courts."  *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002).

Generally, a court must dismiss a state prisoner's habeas petition if the petitioner has not exhausted

available state court remedies as to his federal claims.  *See Coleman v. Thompson*, 501 U.S. 722,

731 (1991); *see also Wood v. McCollum*, 833 F.3d 1272, 1273 (10th Cir. 2016) (permitting a court

to deny the petition, with unexhausted claims, on the merits).  In federal habeas corpus actions, the

petitioner bears the burden of showing he has exhausted his state court remedies as required by 28

U.S.C. § 2254(b).  *See Clonce v. Presley*, 640 F.2d 271, 273 (10th Cir. 1981); *Bond v. Oklahoma*,

546 F.2d 1369, 1377 (10th Cir. 1976).  "The exhaustion requirement is satisfied if the federal issue

has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack." *Dever*, 36 F.3d at 1534. Under the doctrine of comity, a federal court should defer action on claims properly within its jurisdiction until a state court with concurrent power has had an opportunity to consider the matter. *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982).

As a general rule, "a federal court should dismiss unexhausted claims without prejudice so that the [prisoner] can pursue available state-court remedies." *Grant v. Royal*, 886 F.3d 874, 891-92 (10th Cir. 2018) (quoting *Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006)). Dismissal of unexhausted claims, however, "is not appropriate if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds." *Id*. at 892 (quoting *Smallwood*, 191 F.3d at 1267).

For a state procedural ground to be independent, "it must rely on state law, rather than federal law." *Smallwood*, 191 F.3d at 1268. For a state procedural ground to be considered adequate, the procedure must be "strictly or regularly followed and applied evenhandedly to all similar claims." *Id*. (internal citations omitted). In Oklahoma, a defendant must bring all available claims available on direct appeal, or they are deemed waived. Okla. Stat. tit. 22, § 1086; *see also Hale v. Gibson,* 227 F.3d 1298, 1330 (10th Cir.2000) (Oklahoma's Post–Conviction Procedure Act "is an adequate state bar to . . . claims raised on post-conviction review that could have been raised on direct appeal.").

The Tenth Circuit recognizes that Oklahoma's "'waiver rule for claims not previously raised' is 'regularly and even-handedly applied by the state courts.'" *Johnson v. Patton*, Case No. 15-6173, 634 Fed. Appx. 653, 663 (10th Cir. 2015) (quoting *Smallwood*, 191 F.3d at 1268) (unpublished); *see also Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002) (holding Okla. Stat.

24

tit. 22, § 1086 is an independent and adequate state ground for denying habeas relief"). Further, the waiver rule represents an independent state ground. *Id.*

A petitioner may overcome the anticipatory procedural bar "by making either of two alternate showings: he may demonstrate 'cause and prejudice' for his failure to raise the claim in his initial application for post-conviction relief, or he may show that failure to review his claim will result in a 'fundamental miscarriage of justice.'" *Thacker v. Workman*, 678 F.3d 820, 841-42 (10th Cir. 2012); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause for a procedural default exists where 'something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule.'" *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (quoting *Coleman*, 501 U.S. at 753); *see also Spears v. Mullin*, 343 F.3d 1215, 1255 (10th Cir. 2003). Cause may be established by demonstrating "'that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials made compliance impracticable.'" *Scott v. Mullin*, 303 F.3d 1222, 1228 (10th Cir. 2002) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "If cause is established, the petitioner must then show that he suffered actual prejudice as a result of the alleged violation of federal law." *Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997).

"Alternatively, a federal court may proceed to the merits of a procedurally defaulted claim, if the petitioner establishes that a failure to consider the claim would result in a fundamental miscarriage of justice." *Demarest*, 130 F.3d at 941. "[T]he fundamental miscarriage of justice exception seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup v. Delo,* 513 U.S. 298, 324 (1995). To invoke this exception, the petitioner "must

make a colorable showing of factual innocence." *See Marshall v. Jones*, 639 F. Supp. 2d 1240, 1256 (N.D. Okla. 2009).

"To make a credible showing of actual innocence, a petitioner must support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Frost v. Pryor*, 749 F.3d 1212, 1231–32 (10th Cir. 2014) (internal citations and quotations omitted). The new evidence "must be sufficient to show that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence." *Id.* (internal citations and quotations omitted). This standard is "demanding and permits review only in the extraordinary case." *Id.* (internal citations and quotations omitted).

If Bautista attempted to return to state court to pursue this claim, Okla. Stat. tit. 22, § 1086 would bar subsequent review because Bautista could have, but did not, raise this claim in his first post-conviction application but were not. As such, the Court applies an anticipatory bar to Bautista's ineffective assistance of appellate counsel claims. *Ellis*, 302 F.3d at 1186. The Court also finds that Bautista knew of these claims prior to filing his post-conviction application. In his habeas petition, Bautista states he discussed with his trial counsel, during trial, the issue of Graham's truthfulness. Dkt. 1 at 18. Thus, he knew the factual predicate to bring an ineffective assistance of appellate counsel claim in his post-conviction proceedings.

Likewise, the issues concerning sentencing were raised on direct appeal but not presented as a federal claim. Dkt. 26-2 at 15-24. Again, Bautista knew of the factual predicate to bring an ineffective assistance of appellate counsel claim if he believed this issue was raised poorly. As such, Bautista cannot show cause or prejudice to overcome the anticipatory procedural bar. Nor does Bautista satisfy the miscarriage of justice exception. As Bautista states in his habeas petition,

26

"he entered the house of a former girlfriend to obtain collateral for items she refused to return to Petitioner when they broke up.  The expectation was to hold on to her things until she returned his. Fair trade."  Dkt. 2 at 18.

Based on the foregoing, Claim two is denied.

## VI.    CERTIFICATE OF APPEALABILITY

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because Bautista has not made the requisite showing on any of his claims to be entitled to a certificate of appealability, the Court denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.  The Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED.

2.  A certificate of appealability is DENIED.

3.  A separate judgment shall be entered in this matter.

DATED this 20th day of September 2022.

Ronald A. White
United States District Judge
Eastern District of Oklahoma